FILED IN THE
U.S. DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

Mar 19, 2020

SEAN F. McAVOY, CLERK

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF WASHINGTON

BARBARA K. J.,

                    Plaintiff,

    v.

ANDREW M. SAUL,
COMMISSIONER OF SOCIAL
SECURITY,[1]

                    Defendant.

NO: 1:19-CV-3018-FVS

ORDER DENYING PLAINTIFF'S
MOTION FOR SUMMARY
JUDGMENT AND GRANTING
DEFENDANT'S MOTION FOR
SUMMARY JUDGMENT

    BEFORE THE COURT are the parties' cross-motions for summary judgment.

ECF Nos. 10, 14.  This matter was submitted for consideration without oral

---

[1] Andrew M. Saul is now the Commissioner of the Social Security

Administration.  Accordingly, the Court substitutes Andrew M. Saul as the

Defendant and directs the Clerk to update the docket sheet.  *See* Fed. R. Civ. P.

25(d).

ORDER DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND
GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT ~ 1

argument. Plaintiff is represented by attorney D. James Tree. Defendant is represented by Special Assistant United States Attorney Heather L. Griffith. The Court, having reviewed the administrative record and the parties' briefing, is fully informed. For the reasons discussed below, Plaintiff's Motion, ECF No. 10, is denied and Defendant's Motion, ECF No. 14, is granted.

## JURISDICTION

Plaintiff Barbara K. J.[2] (Plaintiff), filed for disability insurance benefits (DIB) on July 27, 2015, alleging an onset date of October 31, 2011. Tr. 266-72. Benefits were denied initially, Tr. 176-82, and upon reconsideration, Tr. 184-89. Plaintiff appeared at a hearing before an administrative law judge (ALJ) on July 17, 2017. Tr. 88-154. On December 21, 2017, the ALJ issued an unfavorable decision, Tr. 18-38, and on December 7, 2018, the Appeals Council denied review. Tr. 1-6. The matter is now before this Court pursuant to 42 U.S.C. § 405(g).

## BACKGROUND

The facts of the case are set forth in the administrative hearing and transcripts, the ALJ's decision, and the briefs of Plaintiff and the Commissioner, and are therefore only summarized here.

---

[2]In the interest of protecting Plaintiff's privacy, the Court will use Plaintiff's first name and last initial, and, subsequently, Plaintiff's first name only, throughout this decision.

ORDER DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT ~ 2

Plaintiff was born in 1979 and was 37 years old at the time of the hearing.  Tr. 119.  She went to school through the tenth grade.  Tr. 119.  She last worked a part-time job as a cook at a racetrack.  Tr. 119-20, 150.  She also has work experience as a caregiver.  Tr. 121-22, 150.

Plaintiff testified she could not work during the relevant period because of her back pain and anxiety.  Tr. 122.  When she has anxiety, it feels like a heart attack; her heart pounds, she shakes, gets sweaty, and loses focus.  Tr. 124-25.  She could not get her job done with anxiety.  Tr. 125.  She had a problem with a disc in her back and eventually had surgery in 2013.  Tr. 126.  Before the surgery, her legs would go numb and she would get shooting pains in her right leg.  Tr. 127, 130.

## STANDARD OF REVIEW

A district court's review of a final decision of the Commissioner of Social Security is governed by 42 U.S.C. § 405(g).  The scope of review under § 405(g) is limited; the Commissioner's decision will be disturbed "only if it is not supported by substantial evidence or is based on legal error."  *Hill v. Astrue*, 698 F.3d 1153, 1158 (9th Cir. 2012).  "Substantial evidence" means "relevant evidence that a reasonable mind might accept as adequate to support a conclusion."  *Id*. at 1159 (quotation and citation omitted).  Stated differently, substantial evidence equates to "more than a mere scintilla[,] but less than a preponderance."  *Id.* (quotation and citation omitted).  In determining whether the standard has been satisfied, a reviewing court must

consider the entire record as a whole rather than searching for supporting evidence in isolation. *Id.*

In reviewing a denial of benefits, a district court may not substitute its judgment for that of the Commissioner. *Edlund v. Massanari*, 253 F.3d 1152, 1156 (9th Cir. 2001). If the evidence in the record "is susceptible to more than one rational interpretation, [the court] must uphold the ALJ's findings if they are supported by inferences reasonably drawn from the record." *Molina v. Astrue,* 674 F.3d 1104, 1111 (9th Cir. 2012). Further, a district court "may not reverse an ALJ's decision on account of an error that is harmless." *Id*. An error is harmless "where it is inconsequential to the [ALJ's] ultimate nondisability determination." *Id*. at 1115 (quotation and citation omitted). The party appealing the ALJ's decision generally bears the burden of establishing that it was harmed. *Shinseki v. Sanders*, 556 U.S. 396, 409-10 (2009).

## FIVE-STEP EVALUATION PROCESS

A claimant must satisfy two conditions to be considered "disabled" within the meaning of the Social Security Act. First, the claimant must be "unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. §§ 423(d)(1)(A). Second, the claimant's impairment must be "of such severity that he is not only unable to do his previous work[,] but cannot, considering

his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." 42 U.S.C. § 423(d)(2)(A).

The Commissioner has established a five-step sequential analysis to determine whether a claimant satisfies the above criteria. *See* 20 C.F.R. § 404.1520(a)(4)(i)-(v). At step one, the Commissioner considers the claimant's work activity. 20 C.F.R. § 404.1520(a)(4)(i). If the claimant is engaged in "substantial gainful activity," the Commissioner must find that the claimant is not disabled. 20 C.F.R. § 404.1520(b).

If the claimant is not engaged in substantial gainful activity, the analysis proceeds to step two. At this step, the Commissioner considers the severity of the claimant's impairment. 20 C.F.R. § 404.1520(a)(4)(ii). If the claimant suffers from "any impairment or combination of impairments which significantly limits [his or her] physical or mental ability to do basic work activities," the analysis proceeds to step three. 20 C.F.R. § 404.1520(c). If the claimant's impairment does not satisfy this severity threshold, however, the Commissioner must find that the claimant is not disabled. 20 C.F.R. § 404.1520(c).

At step three, the Commissioner compares the claimant's impairment to severe impairments recognized by the Commissioner to be so severe as to preclude a person from engaging in substantial gainful activity. 20 C.F.R. § 404.1520(a)(4)(iii). If the impairment is as severe or more severe than one of the

enumerated impairments, the Commissioner must find the claimant disabled and award benefits.  20 C.F.R. § 404.1520(d).

If the severity of the claimant's impairment does not meet or exceed the severity of the enumerated impairments, the Commissioner must assess the claimant's "residual functional capacity."  Residual functional capacity (RFC), defined generally as the claimant's ability to perform physical and mental work activities on a sustained basis despite his or her limitations, 20 C.F.R. § 404.1545(a)(1), is relevant to both the fourth and fifth steps of the analysis.

At step four, the Commissioner considers whether, in view of the claimant's RFC, the claimant is capable of performing work that he or she has performed in the past (past relevant work).  20 C.F.R. § 404.1520(a)(4)(iv).  If the claimant is capable of performing past relevant work, the Commissioner must find that the claimant is not disabled.  20 C.F.R. § 404.1520(f).  If the claimant is incapable of performing such work, the analysis proceeds to step five.

At step five, the Commissioner should conclude whether, in view of the claimant's RFC, the claimant is capable of performing other work in the national economy.  20 C.F.R. § 404.1520(a)(4)(v).  In making this determination, the Commissioner must also consider vocational factors such as the claimant's age, education and past work experience.  20 C.F.R. § 404.1520(a)(4)(v).  If the claimant is capable of adjusting to other work, the Commissioner must find that the claimant is not disabled.  20 C.F.R. § 404.1520(g)(1).  If the claimant is not capable of

adjusting to other work, analysis concludes with a finding that the claimant is disabled and is therefore entitled to benefits. 20 C.F.R. § 404.1520(g)(1).

The claimant bears the burden of proof at steps one through four above. *Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999). If the analysis proceeds to step five, the burden shifts to the Commissioner to establish that (1) the claimant is capable of performing other work; and (2) such work "exists in significant numbers in the national economy." 20 C.F.R. § 404.1560(c)(2); *Beltran v. Astrue*, 700 F.3d 386, 389 (9th Cir. 2012).

## ALJ'S FINDINGS

At step one, the ALJ found Plaintiff did not engage in substantial gainful activity from October 31, 2011, the alleged onset date, through September 30, her date last insured. Tr. 25. At step two, the ALJ found that through the date last insured, Plaintiff had the following severe impairments: anxiety disorder, posttraumatic stress disorder, and affective disorder. Tr. 25. At step three, the ALJ found that through the date last insured, Plaintiff did not have an impairment or combination of impairments that meets or medically equals the severity of a listed impairment. Tr. 27.

The ALJ then found that, through the date last insured, Plaintiff had the residual functional capacity to perform a full range of work at all exertional levels with the following nonexertional limitations:

> The claimant was able to understand, remember and carry out simple tasks and instructions. She could not work with the general public. The

claimant could have occasional, superficial contact with co-workers, but should work independently, not on team or tandem tasks. She could have occasional contact with supervisors. The claimant needed a routine and predictable work environment.

Tr. 28.

At step four, the ALJ found that Plaintiff has no past relevant work. Tr. 32. At step five, after considering the testimony of a vocational expert and Plaintiff's age, education, work experience, and residual functional capacity, the ALJ found that through the date last insured, there were jobs that existed in significant numbers in the national economy that Plaintiff could have performed such as industrial cleaner, kitchen helper, or laundry worker. Tr. 32-33. Thus, the ALJ concluded that Plaintiff was not under a disability, as defined in the Social Security Act, from October 31, 2011, the alleged onset date, through September 30, 2012, the date last insured. Tr. 33.

**ISSUES**

Plaintiff seeks judicial review of the Commissioner's final decision denying disability income benefits under Title II of the Social Security Act. ECF No. 10. Plaintiff raises the following issues for review:

1. Whether the ALJ properly declined to admit medical records submitted by Plaintiff;

2. Whether the ALJ properly evaluated Plaintiff's medically determinable impairments at step two;

3.  Whether the ALJ properly considered the medical opinion evidence; and

4.  Whether the ALJ properly evaluated Plaintiff's symptom claims.

ECF No. 10 at 2.

## DISCUSSION

### A.  Admission of Medical Records

Plaintiff contends the ALJ erred by failing to exhibit and consider records she submitted.  ECF No. 10 at 4-7.  In general, it is the claimant's responsibility to prove disability.  20 C.F.R. § 404.1512(a).  The evidence in the case record must be complete and detailed enough to allow a determination regarding disability.  20 C.F.R. § 404.1512(b).  The Administration has an obligation to develop the medical record and "will make every reasonable effort to help you get medical evidence from your own medical sources."  20 C.F.R. § 404.1512(c).  A "reasonable effort" includes an initial request for evidence from a medical source and one follow-up request if records have not been received in a timely manner.  *Id.*

The regulations further provide that when a claimant submits a request for hearing,

> Each party must make every effort to ensure that the administrative law judge receives all of the evidence and must inform us about or submit any written evidence, as required in § 404.1512, no later than 5 business days before the date of the scheduled hearing.  If you do not comply with this requirement, the administrative law judge may decline to consider or obtain the evidence unless the circumstances described in paragraph (b) of this section apply.

20 C.F.R. § 404.935(a). Paragraph (b) provides that if the five-day deadline is missed, the administrative law judge will accept the evidence if, "[s]ome other unusual, unexpected, or unavoidable circumstance beyond your control prevented you from informing us about or submitting the evidence earlier." 20 C.F.R. § 404.935(b). Examples listed include exceptional circumstances like illness, a death in the family, or a fire which destroys records, plus an exception for when, "[y]ou actively and diligently sought evidence from a source and the evidence was not received or was received less than 5 business days prior to the hearing." 20 C.F.R. § 404.935(b)(iv).

On May 22, 2017, Plaintiff requested that the Office of Hearings Operations (OHO) obtain medical records from five entities: CWCMH-Yakima, 1/5/12 to present; Central WA Family Medicine, 9/29/12 to present; Orthopedics Northwest, 1/1/16 to present; Yakima Gastroenterology Associates, 1/1/16 to present; and Waters Edge Memorial Pain Relief Institute, 5/1/17 to present. Tr. 343-44.

On May 30, 2017, the ALJ informed Plaintiff that records requests were sent to CWCMH and Central WA Family Medicine in 2015, and that they returned records for the relevant time period which is October 31, 2011 to September 30, 2012. Tr. 348 (citing Tr. 361-77). The ALJ noted that records were also requested from Yakima Gastroenterology Associates and Orthopedics Northwest at that time, and each office reported no records for the relevant period. Tr. 527-36. Thus, the

ALJ declined to re-request records from those four offices because requests were made for the relevant time period.  Tr. 22, 348.

The ALJ also indicated that a request for records after the date last insured would be considered "if you can show that these records are relevant to the issues in this case, i.e., whether the claimant was disabled on or before her date last insured of September 30, 2012.  If you wish to make this argument, please do so by June 9, 2017, so I have time to review it and determine whether I will order these records so that they are received prior to the hearing."  Tr. 348.  The ALJ did not receive a response to this letter.  Tr. 22.

Subsequently, Plaintiff submitted medical records from Water's Edge and Yakima Gastroenterology.  Tr. 22.  At the hearing, Plaintiff's representative confirmed the records are not related to the relevant time period.  Tr. 92.  The ALJ found the records are not relevant to the period at issue and declined to admit them as exhibits.  Tr. 22.

Plaintiff also submitted 31 pages of records from Central Washington Comprehensive Mental Health after the five-day pre-hearing deadline.  Tr. 22.  The ALJ noted the records document visits in May and June 2014.  Tr. 22.  Plaintiff's representative confirmed the records are not related to the relevant time period.  Tr. 92.  The ALJ found the records were not timely submitted and not relevant to the period at issue and declined to admit them as exhibits.  Tr. 22.

Plaintiff contends the ALJ erred by finding records not relevant to the period at issue. ECF No. 10 at 6-7. However, Plaintiff was given ample opportunity by the ALJ to establish that the records are related to the period at issue pursuant to the ALJ's May 30, 2017 letter and at the hearing; in fact, Plaintiff admitted the records are not related to the period at issue. Tr. 91-92, 348. Plaintiff argues that the testimony of the medical experts establishes that records from after the period at issue are relevant for "tracking the trajectory" of her mental health impairment from the relevant period to 2017. ECF No. 10 at 6. However, for the reasons discussed *infra*, this line of argument is not persuasive. The ALJ met the obligation to develop the record with respect to Central Washington Comprehensive Mental Health, Central WA Family Medicine, Orthopedics Northwest, Yakima Gastroenterology Associates, and Waters Edge Memorial Pain Relief Institute and reasonably declined to admit records submitted by Plaintiff which are not related to the period at issue.

Next, Plaintiff argues the ALJ should have admitted records from DSHS which were submitted after the five-day deadline. ECF No. 10 at 5. On July 11, 2017, four business days before the July 17 hearing, Plaintiff's counsel advised the ALJ that a records request had also been made for Department of Social and Health Services (DSHS) records. Tr. 22, 353. Plaintiff submitted the DSHS records on

July 14, 2017, the day they were received.[3]   ECF No. 10 at 4.  There is no dispute that both the notice of the DSHS records request and the records obtained from DSHS were submitted less than five days before the hearing as required by 20 C.F.R. § 404.935.  Tr. 353.  The ALJ declined to admit the DSHS records as exhibits because no good cause was shown for the late notification and submission.  Tr. 22.

Plaintiff contends the evidence was "actively and diligently sought" and therefore meets the good cause exception to the five-day pre-hearing notification rule.  ECF No. 10 at 5.  However, the ALJ was "not convinced" because there was no explanation provided as to why the records were not requested from DSHS until July 5, 2017, and the ALJ was not informed until July 11 that the records would be forthcoming.  Tr. 22. When the ALJ inquired why the notice regarding the DSHS records was late, Plaintiff's representative stated, "because we believed that they [the records] would be in long before this," and, "my staff believed that it would not be necessary to notify you . . . an oversight on their part."  Tr. 93-94.

On these facts, the ALJ's determination that good cause was not established is reasonable.  The records in question existed years before the hearing and there was

---

[3] The ALJ observed these records include WorkFirst evaluations, including a duplicate of a WorkFirst form which is already part of the record, and earlier-dated forms.  Tr. 22; *see* Tr. 361-65.  The ALJ also noted that there are some treatment notes included, but they are from 2014, after Plaintiff's date last insured.  Tr. 22.

no explanation provided for making a request for them so close to the hearing date. This cannot reasonably be considered as "unusual, unexpected, or unavoidable circumstance" beyond Plaintiff's control. 20 C.F.R. § 404.935(b). Furthermore, once the request for records was made so close to the hearing date, "oversight" and a belief that the records would arrive in a timely manner does not constitute the diligence required for a good cause exception. For these reasons, the ALJ's finding that good cause was not established to admit the DSHS records was reasonable.

## B. Step Two

Plaintiff contends the ALJ erred by failing to assess any physical medically determinable impairment. ECF No. 10 at 7-10. At step two of the sequential process, the ALJ must determine whether there is a medically determinable impairment established by objective medical evidence from an acceptable medical source. 20 C.F.R. § 404.1521. A statement of symptoms, a diagnosis, or a medical opinion does not establish the existence of an impairment. *Id*. After a medically determinable impairment is established, the ALJ must determine whether the impairment is "severe;" i.e., one that significantly limits his or her physical or mental ability to do basic work activities. 20 C.F.R. § 404.1520(c). However, the fact that a medically determinable condition exists does not automatically mean the symptoms are "severe" or "disabling" as defined by the Social Security regulations. *See e.g. Edlund*, 253 F.3d at 1159-60; *Fair v. Bowen*, 885 F.2d 597, 603 (9th Cir. 1989); *Key v. Heckler*, 754 F.2d 1545, 1549-50 (9th Cir. 1985).

First, Plaintiff contends the ALJ erred by failing to mention her gastrointestinal limitations. ECF NO. 10 at 7. Plaintiff notes reports of diarrhea, perhaps a side effect of Zoloft. ECF No. 10 at 7. Plaintiff also cites weight loss ECF No. 10 at 7. Notably, Plaintiff points to no objective findings of even a diagnosis of a gastrointestinal disorder in the record.[4] ECF No. 10 at 7. These are symptoms and not sufficient to establish a medically determinable impairment.

Second, Plaintiff contends the ALJ erred by failing to find her right knee is a medically determinable impairment. ECF No. 10 at 8. The ALJ discussed Plaintiff's knee issue, noting she had surgery in 2012, although there are no records of treatment before surgery or for the surgery itself in the medical record. Tr. 26. The ALJ found, "the objective findings do not show that the claimant's knee condition caused more than minimal functional limitations following surgical treatment." Tr. 26.

As noted by Plaintiff, the record contains an April 2012 MRI report and records referencing surgery and complaints of knee pain. ECF No. 10 at 8 (citing Tr. 390, 392, 430, 442-43, 446-48, 450, 454). A June 10 emergency room record indicates knee surgery a week prior, with complaints of pain after being hit in the

---

[4] On reply, Plaintiff cites an exam finding of a "firm, mobile mass" as objectively detected by exam in July 2012. ECF NO. 15 at 5 (citing Tr. 390-91). However, the provider's impression was that "no obvious abnormality was seen." Tr. 391.

knee by a friend. Tr. 450. Additional emergency room records from June 18 and 26, 2012, indicate complaints of pain. Tr. 441, 446. In July 2012, Dr. Bracchi noted a tender nodule near the incision and removed a "foreign body" from the area. Tr. 392. A few weeks later, Plaintiff visited the emergency room and complained that physical therapy exacerbated her knee pain, walked with a limp, and indicated her pain medication had been stolen from her car. Tr. 390. The next day, her primary care provider found her range of motion was limited by discomfort and she walked with an antalgic gait. Tr. 390. There are no records after July 2012 indicating any objective findings or limitations due to a knee impairment.

Notably, none of the medical opinions in the record, whether credited or rejected by the ALJ, including the opinion of the medical expert, indicate that a knee impairment exists or causes any functional limitations. Even if some of these records document objective findings rising to the level of a medically determinable impairment, it would not mean that Plaintiff's knee issue was severe or disabling, *see Edlund*, 253 F.3d at 1159-60, and any error would be harmless. The ALJ concluded that Plaintiff's knee did not cause more than minimal functional limitations, Tr. 26, and while Plaintiff has identified symptoms and complaints over a four-month period, she has not identified evidence of any functional limitations resulting from a knee impairment, and the Court finds none in the record. Thus, there is no reasonable basis to conclude that a knee impairment that may have been medically determinable would have been a severe impairment "which significantly limits

[Plaintiff's] physical or mental ability to do basic work activities" or otherwise impacts the residual functional capacity finding. 20 C.F.R. § 404.1520(c).

Third, Plaintiff contends the ALJ erred by finding she does not have a medically determinable back impairment. ECF No. 10 at 9. The ALJ observed that the medical findings after Plaintiff's alleged onset date are essentially normal. Tr. 26 (citing Tr. 481, 485, 490). A diagnosis of "back pain" is indicated, but the ALJ noted that back pain is a symptom and not a diagnosis. Tr. 26. Similarly, Plaintiff contends the ALJ should have mentioned sciatica, which was diagnosed during an emergency room visit, ECF No. 10 at 9 (citing Tr. 486), but as noted *supra*, a diagnosis does not indicate a medically determinable impairment.

The ALJ also noted that the medical expert, Don Clark, M.D., testified that Plaintiff's range of motion was normal, which is consistent with the medical record. Tr. 26, 97, 381. Although the Plaintiff cites observations such as tenderness and abnormal gait, ECF No. 10 at 9 (citing Tr. 457, 486, 490, 492, 497, 505, 505, 508, 521), Dr. Clark also testified that the record indicates no muscular atrophy or loss of sensation, and that Plaintiff's back pain was not explained by objective findings. 26, 98. He opined that Plaintiff did not have a medically determinable back impairment before her date last insured, other than some temporary bruising. Tr. 26, 98-99. Based on all of the foregoing, the ALJ's reasonably concluded Plaintiff does not have a medically determinable back impairment.

## C.    Medical Opinion Evidence

Plaintiff contends the ALJ failed to properly consider the opinions of treating physician, Roger Bracchi, M.D.; medical expert Kenneth N. Asher, Ph.D.; Radhika Farwaha, M.D.; David Bauman, Psy.D.; and Kristi Trickett, D.O.  ECF No. 10 at 10-19.  There are three types of physicians: "(1) those who treat the claimant (treating physicians); (2) those who examine but do not treat the claimant (examining physicians); and (3) those who neither examine nor treat the claimant but who review the claimant's file (nonexamining or reviewing physicians)."  *Holohan v. Massanari*, 246 F.3d 1195, 1201-02 (9th Cir. 2001) (brackets omitted).  "Generally, a treating physician's opinion carries more weight than an examining physician's, and an examining physician's opinion carries more weight than a reviewing physician's."  *Id*.  "In addition, the regulations give more weight to opinions that are explained than to those that are not, and to the opinions of specialists concerning matters relating to their specialty over that of nonspecialists."  *Id*. (citations omitted).

If a treating or examining physician's opinion is uncontradicted, an ALJ may reject it only by offering "clear and convincing reasons that are supported by substantial evidence."  *Bayliss v. Barnhart*, 427 F.3d 1211, 1216 (9th Cir. 2005).  "However, the ALJ need not accept the opinion of any physician, including a treating physician, if that opinion is brief, conclusory and inadequately supported by clinical findings."  *Bray v. Comm'r of Soc. Sec. Admin.*, 554 F.3d 1219, 1228 (internal quotation marks and brackets omitted).  "If a treating or examining doctor's

opinion is contradicted by another doctor's opinion, an ALJ may only reject it by providing specific and legitimate reasons that are supported by substantial evidence." *Bayliss*, 427 F.3d at 1216 (citing *Lester v. Chater*, 81 F.3d 821, 830-31 (9th Cir. 1995)).

### 1. Roger Bracchi, M.D.

In March 2011, Dr. Bracchi completed a disability documentation form and indicated a diagnosis of anxiety disorder. Tr. 363. He opined that Plaintiff's ability to work was limited due to agoraphobia and that she may not function well in groups or a classroom, but she could participate in self directed activities with no hourly limitations. Tr. 363. He indicated she has no limitations on lifting or carrying and that she would likely be limited for three to six months. Tr. 364. In July 2011, Dr. Bracchi completed a similar form and indicated diagnoses of anxiety disorder and depression. Tr. 361. He opined she has no physical limitations but is limited in the ability to concentrate and stay on task, noting "frequent emotional episodes," and that she is unable to work. Tr. 361. He indicated her ability to work would be limited for "months." Tr. 362. The ALJ gave no weight to Dr. Bracchi's assessments. Tr. 31.

First, the ALJ observed that Dr. Bracchi opined that the assessed limitations would last three to six months which does not meet the duration requirement for disability benefits. Tr. 31. To be found disabled, a claimant must be unable to engage in any substantial gainful activity due to an impairment which "can be

expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A); *see also Chaudhry v. Astrue*, 688 F.3d 661, 672 (9th Cir. 2012). Plaintiff observes Dr. Bracchi's July 2011 opinion does not specify the number of months the impairment would continue and argues that if it is assumed the opinion meant the impairments would continue for another three to six months, the total period of impairment would be 16 months. ECF No. 10 at 12. However, the reference to "months" in the second opinion is vague. It is the role of the ALJ to resolve conflicts and ambiguity in the medical and non-medical evidence. *See Morgan v. Comm'r of Soc. Sec. Admin.*, 169 F.3d 595, 599-600 (9th Cir. 1999). Even if Dr. Bracchi's July 2011 opinion indicates another three to six months of limitations (and the Court does not so find), there is no logical basis to conclude that the opinions jointly anticipate a 16-month period of limitations. The ALJ reasonably interpreted Dr. Bracchi's opinions in concluding that they are insufficient to establish a continuous 12-month period of disability.

Second, the ALJ found Dr. Bracchi did not include any findings or analysis to support the limitations assessed. Tr. 31. When confronted with conflicting medical opinions, an ALJ need not accept a treating physician's opinion that is conclusory and brief and unsupported by clinical findings. *Tonapetyan v. Halter*, 42 F.3d 1144, 1149 (9th Cir. 2001), *Matney v. Sullivan*, 981 F.2d 1016, 1019 (9th Cir.1992). Indeed, Dr. Bracchi's comments are scant at best and he did not check the boxes

indicating that the diagnosis is supported by testing, lab reports, or similar findings. Tr. 361, 363. Although Plaintiff contends the opinions are supported by explanations and records, the evidence cited by Plaintiff is not compelling. ECF No. 10 at 13-14. The ALJ's interpretation of the Dr. Bracchi's opinions is specific, legitimate, and supported by substantial evidence.

### 2. Kenneth N. Asher, Ph.D.

Dr. Asher, the medical expert, testified that the record from the relevant period is "rather stingy, but not non-existent." Tr. 110. He found medically determinable impairments of major depressive disorder, agoraphobia/anxiety disorder, and panic disorder/PTSD. Tr. 110. He opined that Plaintiff has marked limitations in all of the "paragraph B" criteria that his ratings are relevant to the middle of 2016, not the period in question. Tr. 117.

The ALJ gave partial weight to Dr. Asher's opinion. Tr. 30. The ALJ noted that Dr. Asher's assessment of marked limitations was based on the opinions of Dr. Bauman which were reasonably rejected by the ALJ, as discussed *infra*. Tr. 30-31, 116. The ALJ also noted that Dr. Asher admitted the marked limitations assessed could not be related back to the time period at issue. Tr. 30. A statement of disability made outside the relevant time period may be disregarded. *Turner v. Comm'r of Soc. Sec. Admin.*, 613 F.3d 1217, 1224 (9th Cir. 2010). Dr. Asher opined that Plaintiff has marked limitations in all of the "paragraph B" criteria, but "my ratings on her impairments are relevant to middle of 2016 . . . that's several

years after the period in question." Tr. 117. Thus, the ALJ reasonably gave little weight to the marked limitations because they do not relate to the relevant period.

Plaintiff contends the ALJ misstated Dr. Asher's testimony and that Dr. Asher actually opined that (1) another consultative exam would provide clarification; and (2) his assessment of Plaintiff's functioning is based on the record. ECF No. 10 at 14. The Court disagrees. With regard to a consultative exam, Dr. Asher testified, "[i]t would be very, very useful to have a . . . consultative psychological or psychiatric evaluation which would look at [Plaintiff's] present mental health functioning diagnostically, and would try to go back to . . . what her diagnostic picture was about five and a half years ago." Tr. 114. When the ALJ asked how that could be done, Dr. Asher conceded that it would be done "[w]ith difficulty." Furthermore, he indicated,

> Now the difficulty, even if [Plaintiff] says that the different symptoms were - - existed five and a half years ago, it would be difficult, if not impossible, to estimate how severe they were. That would be a real stretch. I usually, unless there's some sort of objective information to enable us to do this, I actually think that you can't use somebody's, even memory, for more than a year back. And this is five and a half years.

Tr. 115. He further testified that, "stretching matters a bit," it could be estimated based on a 2016 assessment that Plaintiff might be at least as impaired several years earlier, but "[t]hat's a stretch." Tr. 116. The ALJ asked if there was any way to stretch that to 2012, the end of the period at issue, and Dr. Asher replied, "No." Tr. 116. Indeed, "After-the-fact psychiatric diagnoses are notoriously unreliable."

*Vincent v. Heckler*, 739 F.2d 1393, 1395 (9th Cir. 1984). Taken as a whole, the ALJ reasonably found that Dr. Asher's opinion regarding Plaintiff's functioning does not apply to the relevant period.

### 3. Radhika Farwaha, M.D.

In May 2016, Dr. Farwaha completed a medical report form and diagnosed lumbar disc disease and right L5-S1 herniation. Tr. 547-48. She opined Plaintiff must lie down during the day; is not able to sit or stand for long periods of time; and would miss four or more days of work per month due to back pain. Tr. 547-48. The ALJ gave little weight to Dr. Farwaha's opinion. Tr. 31.

First, the ALJ observed that while Dr. Farwaha opined that the limitations assessed have existed since June 2012, Dr. Farwaha did not begin treating Plaintiff until June 2013. Tr. 31. A physician's opinion may be rejected if the physician's examination occurred outside the relevant period and other contradictory medical evidence exists. *Tidwell v. Apfel*, 161 F.3d 599, 602 (9th Cir. 1998). Plaintiff argues that treatment records from the same facility demonstrating "continuity of care" should have been considered but were not admitted by the ALJ, but as discussed *supra*, those records were reasonably excluded from the record. Furthermore, any such records would not negate the fact that Dr. Farwaha began treating Plaintiff in June 2013. The ALJ reasonably found that Dr. Farwaha's assessment of Plaintiff's condition during the relevant period is less persuasive because she did not begin treatment until after the date last insured.

Second, the ALJ observed that while Dr. Farwaha supplied some explanation for the assessed limitations, the rationale consists of Plaintiff's subjective complaints and does not include objective findings. Tr. 31. A medical opinion may be rejected if it is unsupported by medical findings. *Bray*, 554 F.3d at 1228; *Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1195 (9th Cir. 2004); *Thomas v. Barnhart*, 278 F.3d 947, 957 (9th Cir. 2002); *Tonapetyan*, 242 F.3d at 1149; *Matney*, 981 F.2d at 1019. Dr. Farwaha noted Plaintiff's complaints of throbbing pain in the lower back, numbness in bilateral legs, and weakness of the left leg, but left blank the section of the form asking for detail regarding the relevant clinical findings, test results, and other medical signs. Tr. 547. Plaintiff argues that Dr. Farwaha's treatment notes were dismissed from the record as irrelevant, ECF No. 15 at 10, but this argument is not persuasive, as discussed *supra*. The ALJ's finding is legally sufficient.

Third, the ALJ found that the medical record from the relevant period does not establish any physical limitations before the date last insured. Tr. 31. The consistency of a medical opinion with the record as a whole is a relevant factor in evaluating a medical opinion. *Lingenfelter v. Astrue*, 504 F.3d 1028, 1042 (9th Cir. 2007); *Orn v. Astrue*, 495 F.3d 625, 631 (9th Cir. 2007). As discussed *supra*, the ALJ's finding regarding physical limitations during the relevant period is supported by substantial evidence. Thus, this reason is also legally sufficient.

/ / /

/ / /

### 4. David Bauman, Psy.D.

In May 2016, Dr. Bauman completed a mental source statement form and assessed four severe or extreme limitations and 11 marked limitations. Tr. 541-43. He opined that Plaintiff would be off task over 30 percent of the time and would miss four or more days of work per month. Tr. 543. In March 2017, Dr. Bauman completed a second mental source statement form and assessed three severe limitations and eleven marked limitations. Tr. 554-56. He opined Plaintiff would be off task for 21-30 percent of the time and would miss four or more days of work per month. Tr. 556. The ALJ gave no weight to the statements completed by Dr. Bauman. Tr. 31.

First, the ALJ observed that Dr. Bauman did not opine that the assessed limitations existed before Plaintiff's date last insured, more than three years before his first assessment. Tr. 31. Evidence outside the "actual period at issue" is of limited relevance. *See Turner*, 613 F.3d at 1224. Dr. Bauman's May 2016 and March 2017 opinions were written well after the end of the relevant period in September 2012. There is no basis to conclude they apply to the relevant period and the ALJ's finding is supported by substantial evidence.

Second, the ALJ found that Dr. Bauman did not provide any explanation or support for the limitations assessed. Tr. 31. An ALJ may reject an opinion that is conclusory, brief, and unsupported by clinical findings. *Tonapetyan*, 42 F.3d at 1149; *Matney*, 981 F.2d at 1019. Indeed, Dr. Bauman checked boxes or spaces

indicating his opinion and offered no narrative explanation for any of his conclusions. Tr. 555-57. An ALJ may permissibly reject check-box reports that do not contain any explanation of the bases for their conclusions. *Crane*, 76 F.3d at 253. However, if treatment notes are consistent with the opinion, a check-box form may not automatically be rejected. *See Garrison v. Colvin*, 759 F.3d 995, 1014 n.17 (9th Cir. 2014). However, there are no supporting treatment notes from Dr. Bauman in the record. The ALJ reasonably rejected Dr. Bauman's opinion on this basis.

Third, the ALJ found that the limitations assessed are inconsistent with the evidence from the relevant period. Tr. 31. The consistency of a medical opinion with the record as a whole is a relevant factor in evaluating a medical opinion. *Lingenfelter*, 504 F.3d at 1042; *Orn*, 495 F.3d at 631. As discussed *supra*, the ALJ's findings regarding physical limitations are supported by substantial evidence. Thus, this reason is also legally sufficient.

### 5. *Kristi Trickett, D.O.*

Dr. Trickett completed a medical report form in March 2017 noting diagnoses of intervertebral disc disorder and L5-S1 disc herniation/radiculopathy. Tr. 560. She opined that Plaintiff needs to lie down during the day due to pain and numbness and would miss four or more days of work per month due to anxiety and pain. Tr. 560-61. The ALJ gave no weight to Dr. Trickett's opinion. Tr. 30.

First, the ALJ observed that Dr. Trickett opined that Plaintiff's limitations have existed since November 2012, which is after Plaintiff's date last insured of

September 30, 2012. Tr. 30. A statement of disability made outside the relevant time period may be disregarded. *Turner*, 613 F.3d at 1224. Although Plaintiff essentially urges extrapolation of these retroactive findings to the period before the date last insured, ECF No. 10 at 18-19, there is no basis to conclude the severity of the limitations assessed apply to the relevant period. The ALJ's finding is reasonable and supported by substantial evidence.

Second, the ALJ found Dr. Trickett's opinion is inconsistent with the medical record from the relevant time period. Tr. 30. The consistency of a medical opinion with the record as a whole is a relevant factor in evaluating a medical opinion. *Lingenfelter*, 504 F.3d at 1042; *Orn*, 495 F.3d at 631. The ALJ noted that the medical record does not show Plaintiff had limitations due to a lumbar spine impairment or any other significant ongoing physical limitation before her date last insured, discussed *supra*. Tr. 30. As discussed *supra*, this is a legally sufficient reason supported by substantial evidence.

Third, the ALJ found Dr. Trickett's opinion is undermined by the absence of supporting objective evidence or explanation of the limitations assessed, other than Plaintiff's symptoms. Tr. 30. The amount of relevant evidence supporting an opinion is a relevant factor in evaluating a medical opinion. *Lingenfelter*, 504 F.3d at 1042; *Orn*, 495 F.3d at 631. Plaintiff contends that the opinion is based on Dr. Trickett's diagnosis and a citation to a positive straight leg raise. ECF No. 10 at 19; Tr. 560. However, it is reasonable to conclude that one positive straight leg raise

finding does not support an assessment of severe and disabling limitations. The ALJ's interpretation of the record is supported by substantial evidence.

**D.     Symptom Claims**

Plaintiff contends the ALJ improperly rejected her symptom claims. ECF No. 10 at 19-21. An ALJ engages in a two-step analysis to determine whether a claimant's testimony regarding subjective pain or symptoms is credible. "First, the ALJ must determine whether there is objective medical evidence of an underlying impairment which could reasonably be expected to produce the pain or other symptoms alleged." *Molina*, 674 F.3d at 1112 (internal quotation marks omitted). "The claimant is not required to show that her impairment could reasonably be expected to cause the severity of the symptom she has alleged; she need only show that it could reasonably have caused some degree of the symptom." *Vasquez v. Astrue*, 572 F.3d 586, 591 (9th Cir. 2009) (internal quotation marks omitted).

Second, "[i]f the claimant meets the first test and there is no evidence of malingering, the ALJ can only reject the claimant's testimony about the severity of the symptoms if [the ALJ] gives 'specific, clear and convincing reasons' for the rejection." *Ghanim v. Colvin*, 763 F.3d 1154, 1163 (9th Cir. 2014) (internal citations and quotations omitted). "General findings are insufficient; rather, the ALJ must identify what testimony is not credible and what evidence undermines the claimant's complaints." *Id.* (quoting *Lester*, 81 F.3d at 834); *see also Thomas*, 278 F.3d at 958 ("[T]he ALJ must make a credibility determination with findings

sufficiently specific to permit the court to conclude that the ALJ did not arbitrarily discredit claimant's testimony."). "The clear and convincing [evidence] standard is the most demanding required in Social Security cases." *Garrison v. Colvin*, 759 F.3d 995, 1015 (9th Cir. 2014) (quoting *Moore v. Comm'r of Soc. Sec. Admin.*, 278 F.3d 920, 924 (9th Cir. 2002)).

In assessing a claimant's symptom complaints, the ALJ may consider, *inter alia*, (1) the claimant's reputation for truthfulness; (2) inconsistencies in the claimant's testimony or between his testimony and his conduct; (3) the claimant's daily living activities; (4) the claimant's work record; and (5) testimony from physicians or third parties concerning the nature, severity, and effect of the claimant's condition. *Thomas*, 278 F.3d at 958-59.

First, the ALJ found the medical evidence is inconsistent with Plaintiff's allegations of disabling panic and anxiety. Tr. 29. An ALJ may not discredit a claimant's pain testimony and deny benefits solely because the degree of pain alleged is not supported by objective medical evidence. *Rollins v. Massanari*, 261 F.3d 853, 857 (9th Cir. 2001); *Bunnell v. Sullivan*, 947 F.2d 341, 346-47 (9th Cir. 1991); *Fair*, 885 F.2d at 601. However, the medical evidence is a relevant factor in determining the severity of a claimant's pain and its disabling effects. *Rollins*, 261 F.3d at 857. Minimal objective evidence is a factor which may be relied upon in discrediting a claimant's testimony, although it may not be the only factor. *See Burch v. Barnhart*, 400 F.3d 676, 680 (9th Cir. 2005).

The ALJ observed that at a mental health intake assessment in December 2011, Plaintiff reported depression and anxiety, panic attacks, problems being in public, nightmares, waking up scared, low energy, and panic attacks with crowds. Tr. 29 (citing Tr. 368-71). However, the ALJ noted the intake assessment contains no objective measures supporting the level of limitation alleged in the disability proceeding. Tr. 29. The ALJ noted that Plaintiff was cooperative, pleasant, and in no acute distress during office visits in July and September 2012. Tr. 29, 382, 390. The ALJ also observed that Plaintiff made numerous trips to the emergency room during the relevant period for various physical ailments, but no mental health complaints were documented.[5] Tr. 29 (citing Tr. 405-526). Similarly, Plaintiff's primary care providers noted few mental health complaints and no objective findings consistent with the level of limitation alleged. Tr. 30, 379-404.

Plaintiff contends the ALJ's finding is "at odds with every single treating provider, and with her own ME's assessment of the evidence." ECF No. 10 at 19. As discussed *supra*, the ALJ's evaluation of the opinion evidence was legally sufficient and supported by substantial evidence. Plaintiff further argues that emergency room records say little about Plaintiff's mental health because mental

---

[5] Plaintiff presented at the emergency room at least 13 times between the alleged onset date of October 31, 2011, and the date last insured of September 30, 2012. Tr. 405-526.

health is beyond the specialty of emergency room providers. ECF No. 10 at 20. This argument is not persuasive as it is speculative and without basis in the record.

Second, the ALJ found Plaintiff's brief treatment history is inconsistent with the severe symptoms and functional limitations alleged. Tr. 29. Medical treatment received to relieve pain or other symptoms is a relevant factor in evaluating pain testimony. 20 C.F.R. § 404.1529(c)(3)(iv)-(v). The ALJ is permitted to consider the claimant's lack of treatment in making a credibility determination. *Burch*, 400 F.3d at 681. However, in some cases, it may be inappropriate to consider a claimant's lack of mental health treatment as evidence of a lack of credibility. *See Nguyen v. Chater*, 100 F.3d 1462, 1465 (9th Cir. 1996). Where the evidence suggests lack of mental health treatment is part of a claimant's mental health condition, it may be inappropriate to consider a claimant's lack of mental health treatment as evidence of a lack of credibility. *Id*. Notwithstanding, when there is no evidence suggesting a failure to seek treatment is attributable to a mental impairment rather than personal preference, it is reasonable for the ALJ to conclude that the level or frequency of treatment is inconsistent with the level of complaints. *Molina*, 674 F.3d at 1113-14.

At her first therapy session in December 2011, it was noted that Plaintiff "is denying depressed moods today, which is in contrast to information given at intake." Tr. 29, 375. She said she "doesn't like being in public" and her goal was "to go places and not freak out," but the session focused on behavior problems

with her children rather than her allegedly disabling limitations. Tr. 29, 375. The ALJ noted Plaintiff was discharged after the first session for failure to attend appointments. Tr. 29 (citing Tr. 374). The ALJ found that this brief treatment history and Plaintiff's failure to engage in mental health treatment after discharge is inconsistent with the level of limitation alleged. Tr. 29.

Plaintiff suggests her lack of mental health treatment is due to agoraphobia, ECF No. 10 at 20-21, but no provider in the record indicated or implied any such explanation for her failure to pursue mental health treatment. Furthermore, as the ALJ noted, Plaintiff was able to avail herself of emergency room services throughout the relevant period for various physical complaints. Tr. 29. The ALJ's reasoning is clear and convincing and supported by substantial evidence.

Third, the ALJ found Plaintiff's activities and abilities exceed her alleged limitations during the relevant period. Tr. 30. It is reasonable for an ALJ to consider a claimant's activities which undermine claims of totally disabling pain in assessing a claimant's symptom complaints. *See Rollins*, 261 F.3d at 857. Even if a claimant's daily activities do not demonstrate a claimant can work, they may undermine the claimant's complaints if they suggest the severity of the claimant's limitations were exaggerated. *See Valentine v. Comm'r of Soc. Sec. Admin.*, 574 F.3d 685, 693 (9th Cir. 2009). The ALJ noted Plaintiff was able to shop in stores at off times, attend her son's football games by watching from her van at the sideline, interacted with her son's football coach, and had a relationship with her

boyfriend since before the alleged onset date. Tr. 30. According to the ALJ, this indicates that while Plaintiff has some social limitations, they were not so severe that they precluded all work. Tr. 30.

However, the instances of social contact cited by the ALJ are not persuasive examples of interactions exceeding Plaintiff's allegations of difficulty interacting with others. Tr. 29. The limitations she mentioned, such as going to stores at off hours and sitting in her van to watch football games, seem like reasonable accommodations for her alleged limitations. Similarly, it would not be reasonable to expect that Plaintiff would have had zero contact with other people. The evidence cited by the ALJ is not substantial or convincing. Nevertheless, this error is harmless where, as discussed *supra*, the ALJ lists additional reasons, supported by substantial evidence, for discrediting Plaintiff's symptom complaints. *See Carmickle v. Comm'r of Soc. Sec. Admin.*, 533 F.3d 1155, 1162-63 (9th Cir. 2008); *Molina*, 674 F.3d at 1115; *Batson*, 359 F.3d at 1197.

## CONCLUSION

Having reviewed the record and the ALJ's findings, this Court concludes the ALJ's decision is supported by substantial evidence and free of harmful legal error.

Accordingly,

1. Plaintiff's Motion for Summary Judgment, **ECF No. 10**, is **DENIED**.

2. Defendant's Motion for Summary Judgment, **ECF No. 14**, is **GRANTED**.

1

**IT IS SO ORDERED**.  The District Court Clerk is directed to enter this Order

2 and provide copies to counsel.  Judgment shall be entered for Defendant and the file

3 shall be **CLOSED**.

4 **DATED** March 19, 2020.

5

_____s/ Rosanna Malouf Peterson_____

6 ROSANNA MALOUF PETERSON
United States District Judge

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21